793 A.2d 17

IN RE ZURBRUGG MEMORIAL HOSPITAL'S
1995 MEDICAID RATES.

IN RE HACKETTSTOWN COMMUNITY HOSPITAL
1995 MEDICAID RATES.

IN RE ST. FRANCIS HOSPITAL (JERSEY
CITY) 1995 MEDICAID RATES.

IN RE ST. MARY HOSPITAL (HOBOKEN)
1995 MEDICAID RATES.

IN RE ST. FRANCIS HOSPITAL (TRENTON)
1995 MEDICAID RATES.

IN RE UNITED HEALTHCARE SYSTEM 1995 MEDICAID RATES.

IN RE UMDNJ–UNIVERSITY HOSPITAL 1995 MEDICAID RATES.

IN RE MOUNTAINSIDE HOSPITAL 1995 MEDICAID RATES.

IN RE ST. MARY'S HOSPITAL (PASSAIC) 1995 MEDICAID RATES.

IN RE PALISADES GENERAL HOSPITAL
1995 MEDICAID RATES.

Superior Court of New Jersey
Appellate Division

Submitted September 17, 2001—Decided February 22, 2002.

28

Before Judges SKILLMAN, WALLACE, Jr., and CARCHMAN.

*Kalison, McBride, Jackson & Murphy*, attorneys for appellants Zurbrugg Memorial Hospital and Hackettstown Community Hospital (*Michael J. Kalison*, of counsel; *James V. Hetzel* and *Joseph D. Glazer*, on the brief).

*Reed Smith Shaw & McClay*, attorneys for appellants St. Francis Hospital (Jersey City), St. Mary Hospital (Hoboken), St. Francis Hospital (Trenton), United Healthcare System, UMDNJ–University Hospital, Mountainside Hospital, St. Mary's Hospital (Passaic) and Palisades General Hospital (*Murray J. Klein* and *Calvin A. Jones*, of counsel; *Steven M. Ziolkowski*, on the brief).

*John J. Farmer, Jr.*, Attorney General, and *Phyllis D. Thompson* and *Salvatore G. Rotella, Jr.* (*Covington & Burling*) of the Washington, D.C. Bar, admitted pro hac vice, attorneys for respondent Division of Medical Assistance and Health Services (*Mary F. Rubinstein*, Deputy Attorney General, *Ms. Thompson* and *Mr. Rotella, Jr.*, on the brief).

The opinion of the court was delivered by

CARCHMAN, J.A.D.

Appellants Zurbrugg Memorial Hospital, Hackettstown Community Hospital, St. Francis Hospital (Jersey City), St. Mary Hospital (Hoboken), St. Francis Hospital (Trenton), United Healthcare System, UMDNJ–University Hospital, Mountainside Hospital, St. Mary's Hospital (Passaic) and Palisades General Hospital (collectively "hospitals" or "appellants") appeal from the final decisions of the Acting Director of the Department of Human Services, Division of Medical Assistance and Health Services (Division) affirming the denial by the Division of the hospitals' rate appeals seeking reimbursement of their 1995 Medicaid inpatient hospital

costs.[1] The Division determined, in each instance, that appellants failed to provide any or sufficient information or supporting documentation to warrant a substantive review of their reimbursement claims pursuant to *N.J.A.C.* 10:52–9.1(b)(1)(I). Relying on its interpretation of *N.J.A.C.* 10:52–9.1, the Division concluded that absent compliance with the regulation's submission requirements, it would not conduct a substantive review of the hospitals' rate appeals.

We now reverse and conclude that the Division's refusal to substantively review the rate appeals was arbitrary and unreasonable and represented an improper implementation of the regulatory process. We add that while the burden remains on an appellant to demonstrate entitlement to the regulatory relief requested and submit documentation necessary to support an appeal, an administrative agency cannot rely on imprecise and broad regulatory language as an excuse for abdicating its obligation to review and consider such appeals.

## I.

Before addressing the merits of these appeals, we present a summary of the regulatory process as it existed at the times relevant to the appeals.[2]

In 1982, the Division assumed responsibility for setting rates for Medicaid services, including inpatient hospital services, and adopted new rules via emergency adoption to implement its Medicaid reimbursement system. *See* 25 *N.J.R.* 1582 (April 5, 1993); *N.J.A.C.* 10:52–1.1 to –9.1. The summary statement to the emergency rule adoption noted that the Division's reimbursement system was largely based on the Department of Health (DOH)

---

[1] Although filed as separate appeals, we consolidate them for the purposes of our decision.

[2] For an overview of the background of the Medicaid program, *see United Hosps. Med. Ctr. v. State of New Jersey*, 349 *N.J.Super.* 1, 793 *A.2d* 1 (App.Div. 2002), filed simultaneously with this opinion.

regulations that had previously governed Medicaid reimbursement rates. The summary statement was intended to highlight those areas in which the Division's rules differed from the rules utilized by DOH in administering the Medicaid program as well as the Division's appeal process. Specifically, the Division noted that:

Subchapter 9 provides for rate review and appeal. This subchapter provides the process for filing an appeal with the Division of Medical Assistance and Health Services. This procedure is new to the Division. Formerly hospitals who wished to appeal the rates under the Chapter 83 under the payer system [sic] could do so with DOH. Now, hospitals will file their rate appeals with the Division. Under these proposed rules, the appeal must be filed within a specified time period, that is, 20 days after publication of the rates by the Department of Human Services. The rule also specifies the types of information and the data that the hospital *may be required to submit* to support their appeal.

[ (emphasis added).]

The Division's rate appeal process was amended by rules adopted in February 1995, which were effective for the 1995 rate year. *See* 27 *N.J.R.* 908 (March 6, 1995). *N.J.A.C.* 10:52–9.1(b)(1) requires a hospital seeking a rate review to submit a written request with the Division "within twenty calendar days after publication of the rates by the Department of Human Services." In addition, a hospital challenging its rates has to "identify its rate review issues and submit supporting documentation in writing to the Division within 80 calendar days after publication of the rates by [the Department]." *N.J.A.C.* 10:52–9.1(b)(1)(i). This latter requirement was adopted as part of the 1995 rule amendment, and was not in the prior rule. 27 *N.J.R.* 35, 38 (January 3, 1995).

The regulations identify what the Division has characterized as the three "core-issues" and provide:

The Division will not approve an increase in a hospital's rates unless [1] the hospital demonstrates that it would sustain a marginal loss in providing inpatient services to Medicaid recipients at the rates under appeal even if it were an economically and efficiently operated hospital. Any hospital seeking a rate increase [2] must demonstrate the cost it must incur in providing services to Medicaid recipients and [3] the extent to which it has taken all reasonable steps to contain or reduce the costs of providing inpatient hospital services. The hospital may be required at a minimum to submit to the Department of Human Services, the following information.

[*N.J.A.C.* 10:52–9.1(b)(2) (1995).]

While this regulation makes no specific reference to the submission of documentation to support these "core issues" in a hospital's application, a list of the numerous types of documents the Division *may* request is then provided in the next paragraph. These documents include:

i. Operational reviews;

ii. Efficiency studies and reports identifying opportunities for cost savings;

iii. Minutes of the meeting of the hospital's board of directors and board's finance committee;

iv. Reports of the Joint Commission on the Accreditation of Health Care Organizations;

v. Management letters;

vi. The hospital's strategic plans, long range plans, facilities plans and marketing plans;

vii. The hospital's annual report;

viii. Any analyses of the hospital's marginal cost in providing services to Medicaid or other categories of patients;

ix. Cost accounting documentation or reports pertaining to the hospital's cost incurred in treating Medicaid recipients or the comparative cost of treating Medicaid and other patients;

x. A copy of the hospital's most recent Medicare cost report with all supporting schedules;

xi. Contracts with other payors providing for negotiated rates or discounts from billed charges; and

xii. Evidence that the appealed rates jeopardize the long term financial viability of the hospital (that is, that the hospital is sustaining a marginal loss in treating Medicaid recipients) and that the hospital is necessary to provide access to care for Medicaid recipients.

[*N.J.A.C.* 10:52–9.1(b)(2).]

The rule mandates the action to be taken by the Division. It requires the Division "to review the documentation and determine if an adjustment is warranted." *N.J.A.C.* 10:52–9.1(c). The nature, scope and time of submission of this documentation present critical issues on these appeals.

## II.

In March 1995, the hospitals received Medicaid rate determinations, including their inpatient hospital Medicaid rates, from the Division. The hospitals filed their rate appeals with varying amounts of supporting documentation. The Division denied all of

the rate appeals in February 1996. In its denial letters, the Division noted that all hospital rate appeals were reviewed in light of three criteria: whether the hospital demonstrated the cost it must incur in providing services to Medicaid patients; whether the hospital demonstrated that it took all reasonable steps to contain or reduce its costs; and whether the hospital demonstrated that it would sustain a marginal loss in providing inpatient Medicaid services at the rates under appeal. The Division continued: "This means, as a threshold matter, that no requests will be granted unless the hospital has submitted information responsive to each of the regulatory criterion listed above." Because none of the hospitals had submitted information with respect to *each* of the three "core-issues" identified in *N.J.A.C.* 10:52–9.1(b)(2), the Division denied all of the appeals.

The hospitals filed appeals pursuant to these regulations. Each of the appeals was submitted to the Office of Administrative Law (OAL) as a contested case, and cross-motions for summary decisions were filed. The OAL determinations varied with the Division prevailing as to some cases[3] and the various hospitals succeeding as to others.[4] When the matter was reviewed by the Acting Director, the results were consistent. In each instance, the Acting Director determined that the appeal would be rejected for failure of the hospital to present sufficient documentation to meet the Division's threshold requirement warranting a full substantive review. No appeal was substantively reviewed nor were any findings made by the Acting Director as to the merits of any application. This appeal followed.

## III.

The various hospitals present similar arguments in each appeal. They claim that the Division arbitrarily and capriciously required

---

[3] Zurbrugg, St. Francis (Jersey City), St. Francis (Trenton), and United Healthcare Systems.

[4] Hackettstown, St. Mary (Hoboken), UMDNJ, Mountainside, St. Mary's (Passaic) and Palisades.

the hospitals to submit documentation before it would substantively review their rate appeals. In support of this argument, they focus on the lack of definition in the rule, an alleged violation of the Administrative Procedures Act (APA), *N.J.S.A.* 52:14B–1 to – 15, and the arbitrary reliance on a procedural bar not contemplated by the regulation.

In defending this appeal, the Division counters that appropriate document submission is a threshold requirement under the regulation, and the failure of the hospitals to meet such procedural prerequisite supports the Division's refusal to perform a substantive review of the rate appeals. The Division asserts that the Acting Director correctly rejected any claim for substantive review where a hospital failed to demonstrate marginal loss in serving Medicaid patients. In sum, the Division claims the Acting Director properly concluded that the three core issues must be established to entitle a hospital to relief and adopts her conclusion that it was impossible to "conduct a meaningful analysis as to whether a full rate review is warranted" unless the hospital calculates and submits its Medicaid costs. Moreover, a hospital is not entitled to Medicaid rate relief if it was not efficiently operated. Therefore, unless the hospital presented sufficient documentation to demonstrate both that it operated efficiently and economically and that it sustained a marginal loss, it was not entitled to rate relief. The Division argues that it was reasonable to require that, in its initial rate review application, the hospital submit documentation regarding the three core issues because if all such documentation was not provided, there would be no basis for rate relief, and no need to undertake a full and complete substantive rate review. Absent documentation supporting these issues, the Division asserted that it properly denied a substantive consideration of the appeals.

We first dispose of the Divisions's contention that by rejecting the appeals for failure to provide documentation as to the core issues, the Division was making a determination on the merits that the hospitals had failed to establish the necessary underpinnings

for consideration of its rate appeals. This argument amounts to little more than sophistry. The record is devoid of any analysis or study of the submissions other than a denial by the Division and Acting Director noting an absence of documentation or other support for the core issues and, thereafter, a rejection of the rate application.

We are well aware of the strong presumption of reasonableness that attaches to an agency determination and the deference that must be accorded such an agency determination. *See Van Dalen v. Washington Township,* 120 *N.J.* 234, 244–45, 576 *A.*2d 819 (1990); *City of Newark v. Natural Res. Council in the Dep't of Envtl. Prot.,* 82 *N.J.* 530, 539–40, 414 *A.*2d 1304, *cert. denied,* 449 *U.S.* 983, 101 *S.Ct.* 400, 66 *L.Ed.*2d 245 (1980). We also recognize that this presumption is even stronger when the agency has been delegated the discretion to determine the technical and special procedures for its tasks, *City of Newark, supra,* 82 *N.J.* at 540, 414 *A.*2d 1304, and that we must also give due regard to the agency's expertise where such expertise is a pertinent factor. *Greenwood v. State Police Training Ctr.,* 127 *N.J.* 500, 513, 606 *A.*2d 336 (1992); *Riverside Gen. Hosp. v. New Jersey Hosp. Rate Setting Comm'n,* 98 *N.J.* 458, 469, 487 *A.*2d 714 (1985).

However, other principles apply with equal force. That is, that arbitrary and capricious action by an administrative agency must be overturned. *Worthington v. Fauver,* 88 *N.J.* 183, 204, 440 *A.*2d 1128 (1982). In fact, we are not only privileged but required to overturn arbitrary and capricious agency action. *Ibid.; Drake v. Department of Human Servs.,* 186 *N.J.Super.* 532, 536, 453 *A.*2d 254 (App.Div.1982).

Applying these principles here, we conclude that the Acting Director's summary procedural rejection of these appeals was not only arbitrary and capricious, but an abdication of her responsibility under the Division's own regulations to consider these appeals on the merits.

We commence our analysis with the regulations themselves. We first observe that the regulations are imprecise as to both

substantive definitions and process; moreover, the regulations fail to support the mandate imposed by the Division that prior to substantial review and analysis, a hospital must submit documentation of a specific type or nature. We agree with the hospitals' argument that *N.J.A.C.* 10:52–9.1(b) "requires an interactive process, whereby the hospitals and the Division act together to assemble all of the information that the Division needs to evaluate a particular Medicaid rate appeal." In asserting that the regulation intends the rate review process to be an "interactive" one, the hospitals rely on *N.J.A.C.* 10:52–9.1(b)(2), which provides that hospitals *"may* be required at a minimum to submit" certain information to the Department of Human Services. We read the regulation as requiring the hospital to submit supporting documentation for its rate appeal but granting to the agency the authority to request additional documentation which, by such regulation, the hospital is mandated to provide. The process is indeed an interactive one and relies on an initial submission by the hospital followed by an analysis by the agency and possible request for additional materials, which must then be provided by the hospital. The use of the word "may" rather than "shall" suggests exactly that and provides a reasonable methodology for resolution of the issues in dispute.

We do not disagree, in principle, with the Division that the initial submission must address the three core issues identified by the regulations, but that does not end the inquiry or the "interaction" between the parties. The dilemma faced by a hospital here is that the regulatory process enabled by *N.J.A.C.* 10:52–9.1 is so flawed that compliance becomes a matter of chance rather than one that is carefully enunciated and systematic.

The deficiencies in the lack of definition in the regulation in effect at the time of consideration of these appeals supports this view. Critical to any analysis of the rate appeals is the concept of "marginal loss," a term not defined in the 1995 regulations.[5]

---

[5] The 1995 regulations were amended in 1997 to include, among other things, a definition of "marginal loss." *See N.J.A.C.* 10:52–9.1(b)(2) (effective Dec. 15,

"Marginal loss" is neither self-explanatory nor self-defining. The difficulties resulting from this lack of definition become most apparent in the context of the Division's determination to reject appeals based on a hospital's failure to establish "marginal loss." In declining to consider some of the rate appeals, the Division concluded that the inclusion of fixed costs as an element of marginal loss was inappropriate. The Division did not suggest that such inclusion would prompt further inquiry and revision of a submission, but that it would bar substantive review. This refusal must be considered in the context of inquiries from hospital counsel seeking a definition of "marginal loss," and a lack of agency response to the inquiry.

We deem the Division's position to be, in fact, arbitrary. The regulations were promulgated without a definition of terms. These regulations were in their first year of application, and no body of administrative decision-making existed to provide guidance to the hospitals regarding the limits of marginal loss including any consideration of fixed costs. Given this context, the agency cannot simply decline to consider the merits of any application without providing guidance to assure compliance with this newly enacted regulatory scheme.

Clearly, the regulation contemplates submission of some documentation to support the hospitals' respective position as to each of the three core issues, but as we have noted, contrary to the

---

1997). The regulation was again amended to incorporate its application to the KidCare Plan A fee-for-service, an issue not relevant here. The relevant provision of the current amended regulation provides:

> Marginal loss is the amount by which a hospital's rate year's Medicaid and NJ KidCare–Plan A fee-for-service reimbursement for inpatient services is expected to fall short of the incremental costs, defined as the variable or additional out of pocket costs, that the hospital expects to incur providing inpatient hospital services to Medicaid and NJ KidCare–Plan A fee-for-service patients during the rate year. These incremental costs are over and above the inpatient costs the hospitals would expect to incur during the rate year even if it did not provide service to Medicaid and NJ KidCare–Plan A fee-for-service patients.
>
> [*Ibid.*]

Division's conclusion, that submission should have been the beginning, not the end of the process, especially in the first year that these regulations were in effect. *N.J.A.C.* 10:52–9.1(b)(2)(i) to (xii) provides appropriate guidelines as to what additional information the Division may require. As we construe the regulation, after a preliminary submission by the hospital and a review by the agency, the agency may require the hospital to provide additional information described by the rule. We do not perceive this as imposing any significant burden on the agency, and presumably, the hospital, with significant funds at stake, will provide the requested documentation without delay or question.

The stakes here are significant. The agency, as a public body, is charged with the responsibility of performing its enabled task including consideration of such matters as these appeals. Such a role is especially significant when addressing fiscal issues involving health care providers who are performing a quasi-public function in caring for those who would otherwise not have health resources available to them. We have previously observed and commented about the agency's role and limited response on this issue, *see Hospital Ctr. at Orange v. Guhl,* 331 *N.J.Super.* 322, 332–35, 751 *A.*2d 1077 (App.Div.2000) (holding that the agency violated its statutory responsibilities as the delay in issuing decisions regarding Medicaid rate appeals was "clearly unjustifiable"), and perceive the agency's conduct here as simply a continuation of a lack of diligent concern for the issues involved in these proceedings.[6]

---

[6] We would be remiss if we did not observe that although we are critical of the Division's procedural rejection of the rate appeals, the hospitals' submissions leave something to be desired. In this day and age of limited resources and concern for the fiscal well-being and future of health care facilities, the brief and poorly documented submissions of the hospitals in attempting to secure much needed funds were oft-times cursory and lacking substance. In identifying its rate review issues and providing documentation to support those issues, the hospitals' submissions were summary, conclusory and, in some instances, non-existent. While we conclude that the agency has a responsibility to pursue the matter after submission, the hospitals have a concomitant responsibility to submit meaningful information that will allow the parties to engage in an "interactive" effort to resolve the important issues in dispute.

Ultimately, we reject the view that the regulations impose any rigid precondition on the consideration by the agency of the rate request. Where documentation is provided, the agency must consider the application on the merits consistent with *N.J.A.C.* 10:52–9.1(c). If after review, analysis and, if necessary, a request for supplementary material, the agency concludes that a hospital has not met its burden of establishing the three core requirements, the agency may deny the requested relief with appropriate fact-finding by the agency demonstrating the agency's consideration of the merits of the application. We do not perceive our decision as providing the hospital with an excuse for failing to meet its regulatory obligation to provide some documentation as to the three core issues as required by *N.J.A.C.* 10:52–9.1(b)(1)(i), but it is apparent to us that agency analysis is required in any event. Such analysis was absent here.

## IV.

Ultimately, we view the pre-amendment regulations and the regulatory process engaged in here so flawed that substantial justice will best be served by starting the process anew and allowing the hospitals to make a full submission of documentation consistent with the three core issues identified and, if found to be deficient, then requiring the agency to respond in kind by delineating such documentation that it requires to properly consider the rate appeals. We apply this rule even to those hospitals that provided virtually no documentation in the first instance. The Supreme Court has remarked that government must "turn square corners" when dealing with the public. *See, e.g., Northwest Covenant Med. Ctr. v. Fishman,* 167 *N.J.* 123, 153, 770 *A.*2d 233 (2001) (Stein, J., concurring) (noting the relevance of the principle in a challenge to the Division's reallocation of a hospital's charity care subsidy). We are confident that the parties can appropriately respond to each other to resolve the matters in dispute so as to insure that the needs of the agency, the hospitals and the public interest can best be served.

Reversed and remanded for consideration of appellants' applications consistent with this opinion. We do not retain jurisdiction.