793 A.2d 1 (2002)
349 N.J. Super. 1
UNITED HOSPITALS MEDICAL CENTER, Hospital Center at Orange, St. Francis Medical Center, St. Peter's Medical Center, St. Mary's Hospital (Passaic), Elizabeth General Medical Center, Chilton Memorial Hospital, Deborah Heart & Lung Center, Newcomb Medical Center, Cathedral Healthcare System, Inc., St. Francis Hospital (Jersey City), Mountainside Hospital, Palisades General Hospital, Graduate Health System Rancocas Hospital, St. Mary's Hospital (Hoboken), Morristown Memorial Hospital, Overlook Hospital, and Hackettstown Community Hospital, Appellants,[1]
v.
The STATE of New Jersey and William Waldman, Commissioner, Department of Human Services, Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted September 17, 2001.
Decided February 22, 2002.
*2 Reed, Smith, Shaw & McClay, attorneys for appellants United Hospitals Medical Center, St. Francis Medical Center, St. Mary's Hospital (Passaic), Elizabeth General Medical Center, Chilton Memorial Hospital, St. Francis Hospital (Jersey City), Mountainside Hospital, Palisades General Hospital, St. Mary's Hospital (Hoboken), Morristown Memorial Hospital and Overlook Hospital (Murray J. Klein, Princeton, and Calvin A. Jones, of counsel; Steven M. Ziolkowski, on the brief).
Kalison, McBride, Jackson & Murphy, Liberty Corner, attorneys for appellants Hospital Center at Orange, St. Peter's Medical Center, Graduate Health, System-Rancocas Hospital and Hackettstown Community Hospital, joins in the brief of the appellants represented by Reed, Smith, Shaw & McClay.
John J. Farmer, Jr., Attorney General, and Salvatore G. Rotella and Phyllis D. Thompson (Covington & Burling), of the D.C. bar, admitted pro hac vice, attorneys for respondents (Michael J. Haas, Assistant Attorney General, of counsel; Eileen C. Stokley, Deputy Attorney General, Mr. Rotella and Ms. Thompson, on the brief).
Before Judges SKILLMAN, WALLACE, Jr. and CARCHMAN.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
The issue presented by this appeal is whether regulations governing the Medicaid reimbursement rates for inpatient hospital care, adopted by the Division of Medical Assistance and Health Services in 1995 and 1997, conformed with a federal law, commonly referred to as the Boren Amendment, which required a state's Medicaid *3 rates to be "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated [hospitals]." 42 U.S.C.A. § 1396a(a)(13)(A) (repealed 1997). We conclude that the regulations complied with the Boren Amendment and therefore affirm their validity.
The Medicaid program, established by Title XIX of the Social Security Act, is a joint federal-state program designed to provide medical care for indigent, disabled and elderly persons. 42 U.S.C.A. § 1396. Although states are not required to participate, a state that chooses to participate must operate its program in compliance with the federal statute and regulations. Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784, 794 (1980).
At the federal level, the Medicaid program is administered by the Department of Health and Human Services, through the Health Care Financing Administration (HCFA). In New Jersey, the program is administered by the Division of Medical Assistance and Health Services, Department of Human Services. N.J.S.A. 30:4D-4.
A state that participates in the Medicaid program must submit a "state plan" for HCFA's approval describing the "methods and standards" by which providers of Medicaid services will be reimbursed. See 42 C.F.R. § 447.252(b). If a state decides to change its standards and methods, it must submit a "[s]tate plan amendment." See 42 C.F.R. § 447.256.
Until 1981, the Medicaid program paid hospitals the "reasonable costs" of services actually provided to Medicaid inpatients. Thus, the actual costs incurred by hospitals in treating Medicaid patients were reimbursed, regardless of differences in costs or efficiencies among hospitals.
In an effort to contain the spiraling costs of Medicaid for inpatient hospital care and other medical services and to allow states more flexibility in designing Medicaid programs, Congress enacted the Boren Amendment as part of the 1981 Omnibus Budget Reconciliation Act, Pub.L. No. 97-35. Under this law, the "reasonable cost" methodology was replaced with a new standard under which states were required to pay rates "which ... are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities." 42 U.S.C.A. 1396a(a)(13)(A) (repealed 1997).
Prior to 1995, the Medicaid reimbursement rate for inpatient hospital services in New Jersey was determined by what was commonly called the Diagnosis Related Group (DRG) methodology. See In re Barnert Mem'l Hosp. Rates, 92 N.J. 31, 36, 455 A.2d 469 (1983). This reimbursement rate "consist[ed] of a weighted average of the costs incurred by the hospital in treating a given condition and the average cost incurred by hospitals throughout the state to treat that condition." United Wire, Metal & Mach. Health & Welfare Fund v. Morristown Mem'l Hosp., 995 F.2d 1179, 1189 (3d Cir.), cert. denied, 510 U.S. 944, 114 S.Ct. 382, 126 L.Ed.2d 332 (1993).
However, based on a study conducted in 1994, the Division concluded that the use of this weighted average had resulted in New Jersey hospitals receiving Medicaid payment that substantially exceeded their costs. The Division also concluded that many New Jersey hospitals were not being "efficiently operated" and were incurring "unreasonably high levels of costs" even after accounting for case mix and wage differences.
To address these problems, the Division decided to adopt a new methodology for determining hospitals' Medicaid reimbursement *4 rates. Therefore, the Division proposed amended rules, 27 N.J.R. 34 (January 3, 1995), which changed the "average cost" standard previously used to a "median cost plus five percent" standard. This change was formally adopted in March 1995. 27 N.J.R. 908 (March 6, 1995); N.J.A.C. 10:52-5.4 (1995). The Division subsequently submitted a state plan amendment to the HCFA, which described the new methodology and assured the HCFA that it met the Boren Amendment standards. The Division determined the appellants' 1995 reimbursement rates in accordance with this new methodology.
In 1996, the Division decided to modify its new methodology by substituting a "median cost" standard for the "median cost plus five percent" standard established under the 1995 plan amendment. In explaining this modification, the Division stated that the "median cost plus five percent" standard was only a transitional provision designed "to give hospitals time to pursue strategies to improve their efficiencies" before adoption of the "median cost" standard. 29 N.J.R. 350, 352 (Jan. 21, 1997). This modification was formalized by amended regulations proposed in September 1996, 28 N.J.R. 4022 (Sept. 3, 1996), and adopted in January 1997. 29 N.J.R. 350. The Division again submitted a state plan amendment to the HCFA which assured the federal agency that this modification met the Boren Amendment standards. Although the Division did not formally adopt the amended regulation substituting the "median cost" for the "median cost plus five percent" standard until January 1997, it issued amended 1996 Medicaid reimbursement rates to appellant hospitals on September 26, 1996, reflecting the proposed new "median cost" standard.
On January 17, 1997, appellants filed a notice of appeal from what they characterized as final decisions of the Department of Human Services and legislation enacted by the State on "various dates." Appellants' case information statement indicated that appellants intended to challenge the regulations governing the 1995 and 1996 Medicaid rate-setting process for inpatient hospital care. Because the appellants' notice of appeal and case information statement indicated that the subject matter of this appeal was the validity of the administrative regulations under which their 1995 and 1996 Medicaid reimbursement rates had been determined, the administrative record certified by the Division's statement of items comprising the record was limited to materials relating to the adoption of those regulations and the calculation of appellants' 1995 and 1996 reimbursement rates.
Appellants' brief states that their appeal "seek[s] an Order which directs the Division to devise a rate scheme which complies with federal and state law (and to recalculate the rates accordingly)." A footnote to this statement asserts that "[i]n certain respects, the relief sought and the asserted bases for that relief are more narrow than that indicated in the Hospitals' Notice of Appeal and Case Information Statement, due to events which have occurred since the filing of those documents."
However, rather than narrowing the scope of the appeal, appellants' brief actually seeks to expand it by raising a new issue that was not identified in the notice of appeal or case information statement, which is whether the Boren Amendment still governs the State's determination of Medicaid reimbursement rates for inpatient hospital care even though the Boren Amendment was repealed by the Balanced Budget Act of 1997, Pub.L. No. 105-33 (hereinafter BBA), because the Division has not adopted new regulations in conformity with the requirements of the *5 BBA.[2] In its answering brief, the Division argues that the Boren Amendment is no longer effective even if a state has failed to adopt new regulations in conformity with the BBA, and in any event, the procedures it followed in adopting the 1995 and 1997 regulations complied with the "public process" requirements of the BBA.
We decline to consider these arguments because they were not encompassed by appellants' notice of appeal and case information statement and the record before us is inadequate to determine whether the Division complied with the provisions of the BBA in adopting the 1995 and 1997 regulations, and if not, whether the Boren Amendment continues to apply to the determination of Medicaid reimbursement rates in New Jersey. The record does not indicate what information the HCFA has required the Division to submit in order to demonstrate compliance with the BBA, or what information the Division has submitted to the HCFA in the nearly five years since enactment of that legislation. Nor does the record reveal the complete details of the process the Division followed in adopting the 1995 and 1997 regulations. Therefore, the only issue properly before us is whether the 1995 and 1997 regulations complied with the Boren Amendment at the time of their adoption.

I
Initially, we must address two arguments presented by the Division which, if correct, would obviate the need to consider whether the 1995 and 1997 regulations governing the Medicaid reimbursement rate for inpatient hospital care conformed with the Boren Amendment.
First, appellants argue that the Boren Amendment no longer confers any enforceable rights against the State because it has been repealed. Appellants rely upon the part of the BBA which provides that the repeal of the Boren Amendment "shall take effect on the date of the enactment" of the BBA (i.e., August 5, 1997, see 111 Stat. 251) and that the BBA "shall apply to payment for items and services furnished on or after October 1, 1997." Pub.L. No. 105-33, § 4711(d), 111 Stat. 251 (1997). However, we conclude that the clear implication of the congressional directive that the BBA applies to "payment for items and services furnished on or after October 1, 1997," is that the Boren Amendment continues to govern Medicaid payments for services provided before that cut-off date.
This conclusion is directly supported by the Eleventh Circuit's decision in Florida Ass'n of Rehab, v. Florida Dep't of Health, 225 F.3d 1208, 1217 (11th Cir.2000):
Defendants argue that the repeal of the Boren Amendment now renders Plaintiffs' suit moot. They argue that Congress intended its repeal to prevent just this kind of suit against a state for alleged inadequate reimbursement procedures. Defendants point to several portions of legislative history to argue that Congress's repeal of the Amendment was intended to eliminate the substantive rate-setting requirements of the Amendment (and the ample litigation attendant *6 to those requirements) and replace them with a strictly procedural "notice and comment" method for setting reimbursement rates. Defendants therefore assert that the repeal of the Amendment effectively ended the substantive federal requirement on reimbursement rate-setting by states thereby mooting Plaintiffs' case.
We disagree as to the period prior to the repeal[.] Congress's repeal of the Amendment empowered states to replace their existing Boren-compliant rate plans with new rate plans not subject to challenge based on the reasonableness and adequacy requirements of the Boren Amendment. Congress was explicit on how this change was to occur; states were to promulgate a rate plan and subject it to the "notice and comment" administrative procedure. Such a new plan, however, would cover only those services and items provided after October 1, 1997. Pub.L. 105-33, § 4711(d). Congress made clear that the Boren Amendment still applied to payment for items and services furnished before October 1, 1997. See id. Consequently, Plaintiffs' request for relief regarding services rendered prior to October 1, 1997 had not become moot by the time the district court entered judgment in April 1999.
This appeal is directed primarily at appellants' 1995 and 1996 Medicaid reimbursement rates. Therefore, the repeal of the Boren Amendment does not foreclose appellants from pursuing their claim that the 1995 and 1997 regulations pursuant to which those rates were determined violated that law.
Second, the Division argues that the State has not waived its sovereign immunity so as to permit an action for an alleged violation of the Boren Amendment. In support of this argument, the Division relies upon Alden v. Maine, 527 U.S. 706, 712, 119 S.Ct. 2240, 2246, 144 L.Ed.2d 636, 652 (1999), which held that "the powers delegated to Congress under Article I of the United States Constitution do not include the power to subject nonconsenting States to private suits for damages in state courts." We have no doubt that Alden applies to claims by Medicaid providers against a state. See Florida Dept. of Health & Rehab. Servs. v. Florida Nursing Home Ass'n, 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132, 136 (1981). However, Alden also reaffirmed the well-established rule that states are subject to declaratory and injunctive actions to enforce federal law. 527 U.S. at 747, 119 S.Ct. at 2263, 144 L.Ed.2d at 673-74.
The relief appellants seek through this appeal is at least partly declaratory and injunctive. Appellants seek a declaration that the Division's 1995 and 1997 regulations governing the reimbursement rate for inpatient hospital care violated the procedural and substantive requirements of the Boren Amendment. Moreover, all of the appellants except Overlook Hospital have filed appeals with this court from the Division's denial of their appeals from the determination of their 1995 and 1996 Medicaid reimbursement rates.[3] Those appeals *7 do not present the argument that the Division failed to conform with the Boren Amendment in adopting the regulations upon which appellant's 1995 and 1996 Medicaid rates were calculated, presumably because appellants assumed that issue would be decided in this appeal. However, because of the pendency of those appeals, there has not yet been a final determination of the validity of appellants' Medicaid reimbursement rates for 1995 and 1996. Consequently, if we agreed with appellants' argument that the regulations governing the determination of their 1995 and 1996 Medicaid reimbursement rates violated the Boren Amendment, that conclusion could support appellants' claims for relief in the pending rate appeals. Therefore, Alden does not require the dismissal of this appeal.

II
The Boren Amendment provided in pertinent part:
A State plan for medical assistance must
....
provide for payment ... of the hospital services ... provided under the plan through the use of rates (determined in accordance with methods and standards developed by the State ...) which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards and to assure that individuals eligible for medical assistance have reasonable access ... to inpatient hospital services of adequate quality[.]

[42 U.S.C.A. § 1396a(a)(13)(A) (repealed 1997).]
In enacting this amendment, Congress intended "to give States greater latitude in developing and implementing alternative reimbursement methodologies that promote the efficient and economical delivery of [medical] services [to Medicaid recipients]." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 506, 110 S.Ct. 2510, 2515-16, 110 L.Ed.2d 455, 465 (1990) (quoting H.R.Rep. No. 97-158, Vol. 2, p. 293 (1981)). "Thus, while Congress affirmed its desire that state reimbursement rates be `reasonable,' it afforded States greater flexibility in calculating those `reasonable rates.'" Id. at 506, 110 S.Ct. at 2516, 110 L.Ed.2d at 465.
The Boren Amendment established three general standards that states were required to apply in establishing Medicaid reimbursement rates: (1) "take into account the situation of hospitals which serve a disproportionate number of low income patients with special needs"; (2) establish rates that are "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services"; and (3) "assure that individuals eligible for medical assistance [had] reasonable access (taking into account geographic location and reasonable travel time) to inpatient *8 hospital services of adequate quality." 42 U.S.C.A. § 1396a(a)(13)(A) (repealed 1997). Appellants' sole claim is that the methodology for determining Medicaid reimbursement rates for inpatient hospital care that the Division adopted in the 1995 and 1997 regulations did not comply with the second of these standards; i.e., that it failed to provide Medicaid rates that were "reasonable and adequate."
The term "reasonable and adequate" rate does not denote a "precise number, but rather a rate which falls within a range of what could be considered reasonable and adequate." West Virginia Univ. Hosps., Inc. v. Casey, 885 F.2d 11, 26 (3d Cir.1989) (quoting 48 Fed.Reg. 56,046, 56,049 (Dec. 19, 1983)). "Accordingly, the Boren Amendment contemplates a `deferential' standard of review by the courts in assessing compliance with the reasonable and adequate requirement." New Jersey Hosp. Ass'n v. Waldman, 73 F.3d 509, 515 (3d Cir.1995).
Appellants' primary argument is that in order to show compliance with the reasonable and adequate requirement, the Division had to make findings that (1) identified efficient hospitals; (2) specified the costs that such hospitals had to incur to provide services to Medicaid recipients; and (3) showed the promulgated rate scheme was adequate to reimburse hospitals for such costs. See Pinnacle Nursing Home v. Axelrod, 928 F.2d 1306, 1314 (2d Cir.1991); Amisub (PSL) v. State of Colorado Dep't of Soc. Servs., 879 F.2d 789, 796 (10th Cir.1989), cert. denied, 496 U.S. 935, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990).
We reject this argument substantially for the reasons expressed by the Ninth Circuit Court of Appeals in Folden v. Washington State Dep't of Soc. & Health Servs., 981 F.2d 1054, 1057-58 (9th Cir. 1992):
The appellants' contend that the State must define what is an "economically and efficiently operated facility." In effect, the appellants contend that the State is required to set up a model of an efficiently and economically operated facility and then match the cost of all facilities against that model. As the district court noted, this is neither a requirement of the Boren Amendment nor a requirement of the Amisub opinion. [Folden v. Washington State Dep't of Soc. & Health Servs., 744 F.Supp. 1507, 1532 (W.D.Wash.1990).]
....
The states are left considerable latitude in how to determine what the costs are that "must be incurred by efficiently and economically operated facilities." As the district court correctly noted, the "HCFA has specifically rejected the suggestion that states should be required to define efficiently and economically operated facilities, because `the State's methods and standards implicitly act as the State's definition of an efficiently and economically operated facility.'" 744 F.Supp. at 1532 (citing 48 Fed.Reg. 56,049 (Dec. 19, 1983)).
Thus, the State was not required to follow any particular methodology in establishing a reasonable and adequate Medicaid reimbursement rate. Instead, as further explained in Folden:
[S]tates are free to create their own methods of arriving at the required findings and ... the finding process does not require any special studies or written findings. It is sufficient if the state agency has considered, on the basis of some reasonably principled analysis, whether its payment rates meet the substantive requirements of the Boren Amendment.

[Id. at 1057.] *9 See also Portland Residence, Inc. v. Steffen, 34 F.3d 669, 674 (8th Cir.1994) ("Rates are not substantively inadequate merely because they are insufficient to keep some facilities from losing money."); Lett v. Magnant, 965 F.2d 251, 256 (7th Cir.1992) ("[A] state's inadequate reimbursement of one efficiently and economically operated facility does not necessarily constitute a Boren Amendment violation."); Memorial Hosp. Inc. v. Childers, 896 F.Supp. 1427, 1433 (W.D.Ky.1995) ("States are ... not required to develop a separate definition or model of efficiently and economically operated facilities."); New Jersey Ass'n of Health Care Facilities v. Gibbs, 838 F.Supp. 881, 896 (D.N.J.) (rejecting argument that "New Jersey must establish or designate a `gold star' facility against which all New Jersey facilities must be measured."), aff'd mem., 14 F.3d 48 (3d Cir.1993).
We are satisfied that the Division determined on the basis of "a reasonably principled analysis," as required by Folden, supra, 981 F.2d at 1057, that the reimbursement rate for inpatient hospital care established under the 1995 and 1997 regulations met the substantive requirements of the Boren Amendment, and that the findings and assurances which the Division submitted to the HCFA satisfied the procedural requirements of that now repealed legislation. The Division's studies indicated that hospitals had been paid substantially in excess of their actual costs for the care of Medicaid patients (113% in the aggregate) under the Division's prior methodology. Those studies also indicated that New Jersey hospitals had substantial excess bed capacity (a statewide hospital occupancy rate of approximately 65%), which resulted in higher average costs for inpatient hospital care than if hospital facilities were fully utilized. Consequently, the Division decided to change from a methodology based on average costs to one based on median costs (under the 1995 regulation, median costs plus 5%, and under the 1997 regulation, median costs without any add-on). The Division concluded that if services can be delivered to Medicaid patients at or below an identified cost level in half of the cases treated, it can be reasonably inferred that the cost that must be incurred by an efficiently and economically operated hospital is no more than the median cost.
As further support for the adoption of this new methodology, the Division noted that New Jersey hospitals were making significant efforts to reduce costs through downsizing, consolidations, affiliations, joint purchasing arrangements and regionalization, which could result in Medicaid reimbursement providing hospitals with even more than the 93% of actual costs projected in the Division's study that preceded adoption of the 1997 regulation. Moreover, the Division's studies showed that even without realizing the benefits of these efforts to reduce costs, the inner-city hospitals that treat most Medicaid patients would receive 96% of their costs under the new methodology, while the few hospitals that would receive less than 85% of their Medicaid costs had low Medicaid utilization rates.
The conclusion that the reimbursement rates provided under the 1995 and 1997 regulations were adequate and reasonable was also supported by the findings of the Division's consultants that hospitals' marginal costs for inpatient care of Medicaid recipients were only 60% of their average costs, and that the reimbursement rates provided under the 1995 and 1997 regulations would result in every New Jersey hospital receiving in excess of its marginal costs for the care of Medicaid patients. Moreover, to assure that the rates calculated under the regulations would provide *10 reimbursement for at least the marginal costs incurred in caring for Medicaid patients, the regulations state that a hospital can obtain rate relief if it "demonstrates that it would sustain a marginal loss in providing inpatient services to Medicaid recipients at the rates under appeal even if it were an economically and efficiently operated hospital." N.J.A.C. 10:52-9.1(b)(2).[4] This built-in assurance that every economically and efficiently operated hospital will be reimbursed for at least its marginal cost in providing inpatient services to Medicaid recipients reinforces our conclusion that reimbursement rates provided under the 1995 and 1997 regulations were adequate and reasonable and thus complied with the Boren Amendment.
Affirmed.
NOTES
[1] Deborah Heart & Lung Center, Cathedral Healthcare System, Inc. and Newcomb Medical Center have settled their claims against respondents during the pendency of this appeal and consequently are no longer appellants.
[2] Appellants rely upon Children's Hosp. & Health Ctr. v. Belshe, 188 F.3d 1090 (9th Cir.1999), cert. denied, 530 U.S. 1204, 120 S.Ct. 2197, 147 L.Ed.2d 233 (2000), to support their claim that "the Boren Amendment continues to govern rate setting schemes where a state has promulgated the scheme under the Boren Amendment, and has not changed the scheme pursuant to a public process pursuant to the ... BBA." But see HCMF Corp. v. Allen, 238 F.3d 273, 277 (4th Cir.), cert. denied, 533 U.S. 916, 121 S.Ct. 2522, 150 L.Ed.2d 694 (2001); Children's Seashore House v. Waldman, 197 F.3d 654, 658-60 (3d Cir.1999), cert. denied, 530 U.S. 1275, 120 S.Ct. 2742, 147 L.Ed.2d 1006 (2000).
[3] Appeals from the Division's denials of rate appeals from the determination of their 1995 reimbursement rates were filed by appellants St. Francis Medical Center (A-4970-97T2), St. Mary's Hospital (Passaic) (A-2048-97T2), St. Francis Hospital (Jersey City) (A-3099-97T2), Mountainside Hospital (A-426-97T2), Palisades General Hospital (A-6589-96T2), St. Mary's Hospital (Hoboken) (A-6593-96T2), and Hackettstown Community Hospital (A-6595-96T2). Appeals from the Division's denials of calculation error appeals from the determination of reimbursement rates for 1995, 1996, or both years, were filed by appellants Chilton Memorial Hospital, Graduate Health System Rancocas Hospital, Hackettstown Community Hospital, Hospital Center at Orange, Palisades General Hospital, St. Francis Medical Center (Trenton), St. Mary's Hospital (Passaic), St. Peter's Medical Center, United Hospitals Medical Center and Elizabeth General Medical Center (A-290-97T2, A-139-97T2, A-1935-97T2, A-2047-97T2). Our opinions in those appeals are being filed simultaneously with this opinion. See Atlantic City Med. Ctr. v. Squarrell, 349 N.J.Super. 16, 793 A.2d 10 (App.Div.2002); In re Zurbrugg Hospital's 1995 Medicaid Reimbursement Rates, 349 N.J.Super. 27, 793 A.2d 17 (App.Div.2002).
[4] As previously noted, n. 3 infra, seven of the appellants, St. Francis Medical Center, St. Mary's Hospital (Passaic), St. Francis Hospital (Jersey City), Mountainside Hospital, Palisades General Hospital, St. Mary's Hospital (Hoboken) and Hackettstown Community Hospital, filed administrative appeals to the Division from their 1995 rate determinations under this regulation and have appealed to this court from the Division's denials of relief.