**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0433-19

G.M.,

     Petitioner-Appellant,

v.

DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES and CAMDEN
COUNTY BOARD OF
SOCIAL SERVICES,

     Respondents-Respondents.

_____

Argued May 26, 2021 – Decided June 16, 2021

Before Judges Whipple and Firko.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

Michael Heinemann argued the cause for appellant.

Mark D. McNally, Deputy Attorney General, argued the cause for respondent Division of Medical Assistance and Health Services (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa,

Assistant Attorney General, of counsel; Mark D. McNally, on the brief).

PER CURIAM

Petitioner G.M.[1] appeals from the final agency decision of respondent New Jersey Department of Human Services, Division of Medical Assistance and Health Services (Division) denying her Medicaid application. We affirm.

The record in this case reveals petitioner was eighty-three years old at the relevant time, suffered from dementia, and was permanently institutionalized at a long-term skilled nursing facility. Petitioner's nephew, B.J., held petitioner's power-of-attorney (POA). On January 20, 2018, the Camden County Board of Social Services (CWA) received petitioner's application for Medicaid benefits. The application included a form designating Senior Planning Services (SPS) as petitioner's designated authorized representative (DAR) for Medicaid purposes. Naomi Steinmetz of SPS was named as petitioner's DAR.

On October 9, 2018, the CWA sent a letter to Steinmetz requesting verification of financial information regarding ten specific items. The CWA advised in its letter that petitioner's application would remain in pending status

---

[1] We learned during oral argument that regrettably, petitioner passed away on December 19, 2019. On May 28, 2021, we granted counsel for G.M.'s motion to substitute her estate as appellant nunc pro tunc to May 26, 2021.

A-0433-19

until October 24, 2018, to allow time for the documentation to be provided. Item number five requested verification of the source and purpose of recurring transactions appearing on petitioner's 2013 bank statements labelled, "ACH DEPOSIT UNITEDCAPITALCRE UNITED CAP" (UCC), in the amount of $300. The transactions included debits and credits to and from petitioner's account.

On October 25 and November 26, 2018, petitioner's DAR provided additional information for nine out of the ten items listed in the CWA's October 9, 2018 letter. However, item number five—the UCC transactions—remained unresolved. Item number four was a request for information verifying a set of recurring transactions "ACH DEBIT MILTONBOUHOUTSOS" in the amount of $180. The DAR forwarded a letter from Milton Bouhoutsos, an attorney-at-law, outlining the background of the transactions and explaining the debits against petitioner's account were applied to satisfy previously incurred debts.

Steinmetz's November 26, 2018 letter noted petitioner's family believed the UCC transactions were part of a scam that she was a victim of. In addition, Steinmetz provided unauthenticated screenshots indicating UCC was no longer in business, and therefore, she was unable to provide formal documentation detailing petitioner's UCC transactions.

A-0433-19

On November 28, 2018, Deena Teichman, Director of Operations at SPS, sent an email to the CWA claiming SPS hit a "dead end" in obtaining documents regarding the UCC transactions and queried as to "what else [SPS] should/could do"? On November 30, 2018, petitioner was notified by the CWA that her application for Medicaid benefits was denied because she failed to provide sufficient verification of the UCC transactions.

Steinmetz requested a fair hearing, and the matter was transferred to the Office of Administrative Law (OAL) as a contested case. At the May 13, 2019 fair hearing, Michelle Acevedo appeared on behalf of the CWA and Abe Jankelovits of SPS appeared on behalf of petitioner. Acevedo admitted the CWA took longer than the proscribed time to review petitioner's application due to understaffing and an overwhelming caseload. And, candidly, Acevedo acknowledged that the UCC was a defunct collection agency. The CWA took the position that this matter constitutes a "gray area," but it needed "something more specific, an agreement, a billing summary, anything that could really show what those payments were for."

Steinmetz did not testify at the hearing. B.J. testified petitioner was disorganized and that he did not become her POA until 2017; therefore, he had no information about the UCC transactions or her finances prior to 2017.

4

Following the hearing, the SPS representative provided a May 16, 2019 letter from Bouhoutsos advising he had no record of any transactions involving petitioner and the UCC transactions. The parties submitted written summations.

On July 12, 2019, the ALJ issued an initial decision affirming the denial of petitioner's Medicaid eligibility, finding that petitioner "failed to demonstrate, by a preponderance of the evidence, that appropriate verifications were submitted in a timely fashion to the [CWA], regarding the UCC transactions." The ALJ further commented that there was a lack of testimony from petitioner's POA as to any steps or efforts undertaken to determine the nature of the UCC transactions.

In addition, the ALJ noted "[n]othing was presented as to additional efforts made by the DAR to obtain further information about [the] UCC [transactions], except for a subsequent letter from an attorney, which was dated after testimony was taken in this matter." The ALJ also found that although the CWA "admittedly did not process [petitioner's] Medicaid application in a timely fashion, apparently due to understaffing," the CWA "did extend additional time to [Steinmetz] to provide supplemental verifications regarding multiple issues."

On August 16, 2019, the Division issued its final administrative decision adopting the ALJ's initial decision. The Assistant Commissioner emphasized

the information provided regarding the UCC transactions was "circumstantial at best" and highlighted discrepancies in the screenshots and documentation provided by the DAR attempting to substantiate petitioner's argument that UCC was no longer doing business. In conclusion, the Assistant Commissioner found petitioner failed to corroborate the nature of the transactions or their source. This appeal followed.

Petitioner argues that: (1) the subject verifications were not required under Medicaid regulations for a determination of Medicaid eligibility; (2) the CWA's ten-month delay in receiving G.M.'s application was an egregious violation of Medicaid regulations and prejudiced her ability to obtain the verifications; and (3) the Division's denial of Medicaid benefits was arbitrary and capricious since the verifications were impossible to obtain, and the CWA refused to provide guidance or assistance as required by Medicaid regulations. We disagree.

Appellate review of the Division's final agency action is limited. K.K. v. Div. of Med. Assistance & Health Servs., 453 N.J. Super. 157, 160 (App. Div. 2018). We "defer to the specialized or technical expertise of the agency charged with administration of a regulatory system." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008). "[A]n appellate court ordinarily should not disturb an administrative agency's determinations or

findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." Ibid.

A presumption of validity attaches to the agency's decision. See Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997). The party challenging the validity of an agency's decision has the burden of showing that it was arbitrary, capricious, or unreasonable. J.B. v. N.J. State Parole Bd., 444 N.J. Super. 115, 149 (App. Div. 2016) (quoting In re Hermann, 192 N.J. 19, 27-28 (2007)). "Deference to an agency decision is particularly appropriate where interpretation of the Agency's own regulation is in issue." I.L. v. Div. of Med. Assistance & Health Servs., 389 N.J. Super. 354, 364 (App. Div. 2006). However, "an appellate court is 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'" R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting Mayflower Sec. Co. v. Bureau of Sec. in Div. of Consumer Affairs of Dep't of Law & Pub. Safety, 64 N.J. 85, 93 (1973)).

Medicaid is a federally-created, state-implemented program that provides "medical assistance to the poor at the expense of the public." Estate of DeMartino v. Div. of Med. Assistance & Health Servs., 373 N.J. Super. 210,

217 (App. Div. 2004) (quoting <u>Mistrick v. Div. of Med. Assistance & Health Servs.</u>, 154 N.J. 158, 165 (1998)); <u>see also</u> 42 U.S.C. § 1396-1. Although a state is not required to participate, once it has been accepted into the Medicaid program it must comply with the Medicaid statutes and federal regulations. <u>See</u> <u>Harris v. McRae</u>, 448 U.S. 297, 301 (1980); <u>United Hosps. Med. Ctr. v. State</u>, 349 N.J. Super. 1, 4 (App. Div. 2002); <u>see also</u> 42 U.S.C. § 1396a(a) and (b).

The State must adopt "'reasonable standards . . . for determining eligibility for . . . medical assistance . . . [that are] consistent with the objectives' of the Medicaid program[,]" <u>Mistrick</u>, 154 N.J. at 166 (first alteration in original) (quoting <u>L.M. v. Div. of Med. Assistance & Health Servs.</u>, 140 N.J. 480, 484 (1995)), and "provide for taking into account only such income and resources as are . . . <u>available</u> to the applicant." <u>N.M. v. Div. of Med. Assistance & Health Servs.</u>, 405 N.J. Super. 353, 359 (App. Div. 2009) (quoting <u>Wis. Dep't of Health & Family Servs. v. Blumer</u>, 534 U.S. 473, 479 (2002)); <u>see also</u> 42 U.S.C. § 1396a(a)(17)(A)-(B).

New Jersey participates in the federal Medicaid program pursuant to the New Jersey Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 to -19.5. Eligibility for Medicaid in New Jersey is governed by regulations adopted in accordance with the authority granted by N.J.S.A. 30:4D-7 to the

Commissioner of the Department of Human Services (DHS). The Division is the agency within the DHS that administers the Medicaid program. N.J.S.A. 30:4D-5, -7; N.J.A.C. 10:49-1.1. Accordingly, the Division is responsible for protecting the interests of the New Jersey Medicaid Program and its beneficiaries. N.J.A.C. 10:49-11.1(b).

In this State, in order to qualify for Medicaid benefits, an applicant's resources cannot exceed $2000. N.J.A.C. 10:71-4.5(c). Resources are defined as:

> any real or personal property which is owned by the applicant (or by those persons whose resources are deemed available to him or her, as described in N.J.A.C. 10:71-4.6) and which could be converted to cash to be used for his or her support and maintenance. Both liquid and non[-]liquid resources shall be considered in the determination of eligibility, unless such resources are specifically excluded under the provisions of N.J.A.C. 10:71-4.4(b).
>
> [N.J.A.C. 10:71-4.1(b).]

The regulations explain that a resource must be "available" to be considered by the CWA in determining an applicant's eligibility. N.J.A.C. 10:71-4.1(c). A resource is deemed "available" when: "1. [t]he person has the right, authority or power to liquidate real or personal property or his or her share of it; 2. [r]esources have been deemed available to the applicant ([pursuant to

9

N.J.A.C. 10:71-4.6]); or 3. [r]esources arising from a third-party claim or action" under certain circumstances. Ibid.

The value of the resource is "defined as the price that the resource can reasonably be expected to sell for on the open market in the particular geographic area minus any encumbrances (that is, its equity value)." N.J.A.C. 10:71-4.1(d). Importantly, the regulation explains that "[t]he CWA shall verify the equity value of resources through appropriate and credible sources." N.J.A.C. 10:71-4.1(d)(3) (emphasis added). A determination regarding resource eligibility is made "as of the first moment of the first day of each month." N.J.A.C. 10:71-4.1(e). The CWA may deny eligibility for Medicaid if the applicant fails to timely provide verifying information or "verifications." N.J.A.C. 10:71-2.2(e); N.J.A.C. 10:71-3.1.

In order to discourage an applicant from disposing of assets for the sole purpose of becoming eligible for Medicaid nursing home facility services, regulations impose a period of ineligibility to an applicant receiving an institutional level of benefits who transfers resources for less than fair market value during a sixty-month look-back period. N.J.A.C. 10:71-4.10(a)(2). Transfers made within the look-back period "are presumed to be improperly motivated to obtain Medicaid eligibility." W.T. v. Div. of Med. Assistance and

Health Servs., 391 N.J. Super. 25, 36 (App. Div. 2007). However, an applicant retains the right to rebut the presumption. N.J.A.C. 10:71-4.10(j). If the presumption is not rebutted, the State imposes a transfer penalty, calculating the period of ineligibility following a transfer of an available resource. N.J.A.C. 10:71-4.10(b)(4) and 10:71-4.10(c).[2] Where an applicant's resource statements are questionable, or there is reason to believe the identification of resources is incomplete, the CWA can request verification of the applicant's resource statements through one or more third parties. N.J.A.C. 10:71-4.1(d)(3).

Applicants must provide the CWA with the information necessary to enable it to determine if the applicant is eligible for benefits. Further, applicants must "[a]ssist the CWA in securing evidence that corroborates his or her statements," N.J.A.C. 10:71-2.2(e)(2), and the applicant must do so from pertinent sources. See N.J.A.C. 10:71-3.1(b). The CWA is permitted to deny an application if the applicant fails to timely provide verifying information or "verifications." See N.J.A.C. 10:71-2.2(e); -2.12; -3.1(b).

We address the documents and information the CWA requested the petitioner provide. The CWA requested petitioner provide source and purpose

---

[2] "The transfer penalty is calculated by dividing the uncompensated portion of the transferred resource by the monthly average cost of nursing home care in this State." W.T., 391 N.J. Super. at 37.

verification for the recurring debit and deposit transactions from UCC appearing on her bank statements from April 2, 2013, through December 2, 2013. Steinmetz merely submitted webpage screen shots ostensibly taken from a Facebook page, the Better Business Bureau, internet search results, and a copy of UCC's former website. Petitioner's former attorney could not provide answers to the CWA's inquiry. As the ALJ noted in her decision, the CWA "cannot read between the lines and hypothesize what was the purpose of the [UCC] debit and deposit transactions." Because the CWA is tasked with ensuring that applicants have below $2000 in resource levels, and petitioner's proof of eligibility was inconclusive, the Division's decision to deny petitioner's application was not arbitrary, capricious, or unreasonable.

Moreover, we reject petitioner's argument that the UCC verifications were unnecessary under the Medicaid regulations for a determination of eligibility. "The CWA shall verify the equity value of resources through appropriate and credible sources. . . . If the applicant's resource statements are questionable, or there is reason to believe the identification of resources is incomplete, the CWA shall verify the applicant's resource statements through one or more third parties." N.J.A.C. 10:71-4.1(d)(3). This condition is not waivable and was not satisfied here by petitioner.

12

Petitioner claims she complied with N.J.A.C. 10:71-2.2(d)(2) by assisting the CWA in trying to verify the account. She argues the CWA did not assist her as required by N.J.A.C. 10:71-2.2(c). However, although the CWA is responsible for assisting an applicant, the regulations did not create an affirmative duty upon the CWA to procure all documents necessary to complete the application, especially when petitioner had Steinmetz as her representative.

The regulations establish timeframes to process a Medicaid application, with the "[d]ate of effective disposition" being the "effective date of the application" where the application has been approved. N.J.A.C. 10:71-2.3(b)(1). "The maximum period of time normally essential to process an application for the aged is [forty-five] days." N.J.A.C. 10:71-2.3(a). New Jersey regulations recognize:

> there will be exceptional cases where the proper processing of an application cannot be completed within the [forty-five day] period. Where substantially reliable evidence of eligibility is still lacking at the end of the designated period, the application may be continued in pending status. In each such case, the [CWA] shall be prepared to demonstrate that the delay resulted from one of the following:
>
> . . . .
>
> (2) A determination to afford the applicant, whose proof of eligibility has been inconclusive, a further

opportunity to develop additional evidence of eligibility before final action on his or her application.

(3) An administrative or other emergency that could not reasonably have been avoided; or

(4) Circumstances wholly outside the control of both the applicant and the CWA.

[N.J.A.C. 10:71-2.3(c).]

Petitioner's application was made in January 2018 and was still pending in November 2018. The record shows petitioner's DAR was granted extensions of time to submit sufficient verification of the UCC transactions in dispute. The ALJ found the CWA was understaffed and was processing an "overwhelming" number of applications that led to the delay in reviewing petitioner's application. Given the deference we accord the ALJ's findings, and having determined that they are supported by sufficient credible evidence in the record, we conclude the decision was neither arbitrary nor unreasonable. We discern no basis to disturb the decision on this score.

Here, the Division rendered its final decision after interpreting its own regulations. We may reverse only upon a showing that the Division acted arbitrarily, capriciously, or unreasonably. "Deference to an agency decision is particularly appropriate where interpretation of the Agency's own regulation is in issue." R.S., 434 N.J. Super. at 261 (quoting I.L., 389 N.J. Super. at 364). It

is not arbitrary, capricious, or unreasonable for the Division to deny an application that did not have the information necessary to verify eligibility after giving extensions.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0433-19