**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0364-15T2

ATLANTICARE REGIONAL MEDICAL
CENTER, BAYSHORE COMMUNITY
HOSPITAL, CAPITAL HEALTH
MEDICAL CENTER — HOPEWELL,
CAPITAL HEALTH REGIONAL
MEDICAL CENTER, CHILTON
HOSPITAL, COOPER UNIVERSITY
HOSPITAL, DEBORAH HEART AND
LUNG CENTER, EAST ORANGE
GENERAL HOSPITAL, ENGLEWOOD
HOSPITAL AND MEDICAL CENTER,
HACKENSACK UNIVERSITY MEDICAL
CENTER, JERSEY SHORE
UNIVERSITY MEDICAL CENTER,
JFK MEDICAL CENTER, LOURDES
MEDICAL CENTER - BURLINGTON,
MORRISTOWN MEMORIAL HOSPITAL,
NEWTON MEMORIAL HOSPITAL,
OCEAN MEDICAL CENTER, OUR
LADY OF LOURDES MEDICAL
CENTER, OVERLOOK MEDICAL
CENTER, PALISADES MEDICAL
CENTER, RARITAN BAY MEDICAL
CENTER, RIVERVIEW MEDICAL
CENTER, SOMERSET MEDICAL
CENTER, SOUTHERN OCEAN
MEDICAL CENTER, ST. FRANCIS
MEDICAL CENTER, and ST.
MARY'S HOSPITAL,

     Petitioners-Appellants,

v.

DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES,

    Respondent-Respondent.

_____

Argued October 3, 2017 — Decided October 25, 2017

Before Judges Yannotti, Carroll and Mawla.

On appeal from the Division of Medical
Assistance and Health Services, Docket Nos.
HMA 5152-14 to 5157-14, 5161-14, 5163-14 to
5164-14, 5166-14 to 5172-14, 5174-14 to 5175-
14, 5177-14, 5180-14, 5182-14, 5184-14 to
5185-14, 5188-14, 5191-14, 5194-14, 5252-14 to
5264-14, 5266-14, and 5268-14 to 5275-14.

James A. Robertson argued the cause for
appellants (McElroy, Deutsch, Mulvaney &
Carpenter, LLP, attorneys; Mr. Robertson, of
counsel and on the briefs; Paul L. Croce and
Marissa Koblitz Kingman, on the briefs).

Jacqueline R. D'Alessandro, Deputy Attorney
General, argued the cause for respondent
(Christopher S. Porrino, Attorney General,
attorney; Melissa H. Raksa, Assistant Attorney
General, of counsel; Jennifer L. Cavin and
Jennifer Simons, Deputy Attorneys General, on
the brief).

PER CURIAM

Atlanticare Regional Medical Center and twenty-four other New Jersey hospitals (the Hospitals) appeal from a final decision of the Director of the Division of Medical Assistance and Health Services (Division) dismissing their administrative appeals

regarding their Medicaid inpatient reimbursement rates for 2013. We affirm.[1]

                                    I.

We briefly summarize the relevant facts and procedural history. On December 14, 2012, the Division informed the Hospitals of their Medicaid rates for 2013. Under the Division's regulations, hospitals may challenge the rates on the basis of: a calculation error in the computation of the rate, N.J.A.C. 10:52-14.17(b), or any other reason, including the methodology employed in setting the rate, N.J.A.C. 10:52-14.17(c).

The hospital must inform the Division of its intent to submit the appeal within twenty days after it has received its rates. N.J.A.C. 10:52-14.17(c)(1). The hospital also must identify the rate appeal issue that is being raised, and submit supporting documentation within eighty calendar days after receiving the rates. N.J.A.C. 10:52-14.17(c)(2). The hospital's submission must detail the basis for the challenge and calculate the "financial impact of the rate appeal issue on the hospital's final rate and

---

[1] We note that in October 2016, the court consolidated this appeal with Our Lady of Lourdes Hospital-Burlington v. Division of Med. Assist. & Health Services, No. A-2919-15. We have determined that the issues raised on appeal should be addressed in separate opinions. Therefore, we vacate the order of consolidation.

its estimated impact on the hospital's Medicaid inpatient reimbursement for the rate year." N.J.A.C. 10:52-14.17(c)(3).

In January 2013, twenty-three hospitals submitted notices of intent to file rate appeals pursuant to N.J.A.C. 10:52-14.17(c). Twenty-five hospitals submitted calculation error appeals pursuant to N.J.A.C. 10:52-14.17(b), and thirteen of those hospitals alleged the Division had understated the inflation factor that had been applied to their rates from 1995 to 1998. The hospitals claimed the error had a compounding effect on the rates for the subsequent years, including 2013. These hospitals also challenged the Division's use of a zero inflation rate in setting the 2013 rates.

In March 2013, the twenty-three hospitals submitted additional information to the Division in support of their rate appeals. Each of these hospitals asserted that the statutory mandate in N.J.S.A. 26:2H-18.64, which requires that they provide care to all patients regardless of their ability to pay (charity care), and the State's charity care subsidy payments, have resulted in an unconstitutional taking of their property without just compensation.

The hospitals asserted they were not in a position to provide the Division with detailed calculations showing the financial impact of the rate appeal issue, or determine the estimated impact

the issue would have upon the hospitals' Medicaid reimbursement rates for 2013. The hospitals asked the Division for information about the methodology it used to set the rates, so that they could "make the appropriate assessment of the issue."

In October 2013, the Division issued letters stating that N.J.A.C. 10:52-14.17(b) precluded the hospitals from challenging their 2013 rates based on an alleged calculation error regarding the 1995 and 1998 rates. The Division also rejected the contention that it improperly applied a zero percentage inflation rate for 2013.

In addition, the Division rejected the rate appeals on the ground that no hospital which raised the issue had "demonstrated that it will incur a marginal loss in providing care to Medicaid inpatients under its rates [for] 2013." The Division also advised that the appeal process was not an appropriate vehicle for seeking information about the Division's rate methodology, which is set forth in the regulations.

Thereafter, the Hospitals filed administrative appeals from the Division's October 2013 determinations, which the Division referred to the Office of Administrative Law (OAL) for consideration as contested cases. The Administrative Law Judge (ALJ) consolidated the appeals. The hospitals pursuing rate appeals advised the ALJ that they were raising a single issue, and

all twenty-five of the hospitals advised the ALJ that they would be pursuing challenges based on either one or two calculation errors.

The ALJ thereafter identified three issues in dispute: (1) whether there was an error in the calculation of rates for 1995 to 1998, which resulted in incorrect Medicaid reimbursement rates for 2013; (2) whether the application of a zero percent inflation factor for 2013 was consistent with state and federal law; and (3) whether the charity care mandate, the State's allegedly inadequate charity care subsidies, and the 2013 Medicaid reimbursement rates resulted in an unconstitutional taking of the Hospitals' property without just compensation.

The Hospitals later filed a motion for summary decision on these issues, and the Division filed a cross-motion seeking the same relief. The ALJ issued an initial decision dated March 30, 2015. In that decision, the ALJ stated that since the Hospitals were essentially raising a constitutional challenge to the charity care statute, their dispute was not with the Division, but rather with the Department of Health and Senior Services (Department), which administers the charity care program. The ALJ therefore found the Division did not have jurisdiction to consider these claims.

The ALJ also determined that the Division had properly applied a zero inflation factor in setting the Hospital's 2013 rates. The ALJ noted that in June 2012, the Governor signed the Annual Appropriations Act for the 2012-2013 fiscal year (FY), which stated in part that "effective January 1, 2013, the Medicaid inpatient fee-for-service payment rates will not be adjusted to incorporate the annual excluded hospital inflation factor, also referred to as the economic factor recognized under" federal law. The ALJ determined that the Division had implemented the amendment to the State's plan in accordance with 42 U.S.C.A. § 1396a(a)(13) and 42 C.F.R. § 447.205, and properly applied the amendment in setting the Hospitals' rates for 2013.

In addition, the ALJ determined that the Hospitals could not assert a calculation error in the 2013 rates based on the alleged error in setting the rates for 1995 to 1998. The ALJ found that N.J.A.C. 10:52-14.17(b) precludes the Hospitals from raising this issue with regard to the 2013 rates because the regulation limited the Hospitals to challenges based on rate adjustments made since the issuance of the 2012 rates, and the Hospitals had not preserved the issue by raising it by pursuing a timely-filed appeal challenging the rates for 2009.

The ALJ further found that the hospitals presenting rate appeals failed to present sufficient evidence to show the financial

impact of their appeals and the estimated impact the issue would have upon the hospitals' Medicaid reimbursement rates in the rate year. The ALJ rejected the Hospitals' application for leave to supplement the record with additional evidence on these issues.

The ALJ noted, however, that the Division's regulatory standard for rate appeals is "so vague as to be arbitrary" and the standard "virtually guarantees that no party subject to its parameters will be capable of compliance with its requirements." The regulation provides that the Division will undertake a financial review if the Division finds, based on the information submitted, that the rate appeal has "merit." N.J.A.C. 10:52-14.17(c)(4).

Citing In re Zurbrugg Memorial Hospital's 1995 Medicaid Rates, 349 N.J. Super. 27, 36-38 (App. Div. 2002), the ALJ stated that the rate appeals should be remanded to the Division for an "interactive process" on the "merit" standard in N.J.A.C. 10:52-14.17(c). In that process, the Division could explain its definition of "merit" and the evidence required for a rate appeal.

The Director issued a final decision on August 11, 2015. The Director adopted the ALJ's decision with regard to the alleged calculation error in the rates for 1995 to 1998, the use of a zero inflation factor for the 2013 rates, and the constitutional claims based upon the charity care mandate.

A-0364-15T2

The Director rejected, however, the ALJ's decision regarding the need to undertake an "interactive process" regarding the "merit" standard in N.J.A.C. 10:52—14.17(c). The Director noted that before the ALJ, the Hospitals had not argued that the "merit" standard was vague. The Director found that there was no confusion as to the meaning of the term "merit" and no need for a remand. This appeal followed.

On appeal, the Hospitals argue: (1) the Division erroneously denied the calculation error appeals on procedural grounds; (2) the 2013 rates should be adjusted based on the alleged error in the calculation of rates for 1995 to 1998; (3) the Division failed to comply with the requirements of the federal Medicaid statute and regulations when it implemented the zero percent inflation factor for 2013; (4) they were denied due process because the Director did not permit them to engage in an "interactive process" regarding the "merit" standard in N.J.A.C. 10:52-14.17(c); and (5) the Division erred by rejecting their constitutional claims.

II.

We turn first to the Hospitals' contention that the Director erred by concluding that N.J.A.C. 10:52-14.17(b) bars the challenges to the calculation of their 2013 rates, based on the continuing effect of alleged errors in their rates from 1995 to 1998.

We note that the scope of our review of an administrative agency's decision is limited. Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9 (2009). In an appeal from a final decision of an administrative agency, our inquiry is limited to the following:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 385-86 (2013) (quoting Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)).]

Although we are not bound by an agency's legal conclusions, we generally defer to the agency's interpretation of its own regulations and enabling statutes. Utley v. Bd. of Review, 194 N.J. 534, 551 (2008). We give considerable deference to the agency's interpretation of its own rules "because the agency that drafted and promulgated the rule should know [its] meaning . . . ." N.J. Healthcare Coal. v. N.J. Dept. of Banking & Ins., 440 N.J. Super. 129, 135 (App. Div.) (quoting In re Freshwater Wetlands Gen. Permit No. 16, 379 N.J. Super. 331, 341-42 (App. Div. 2005)), certif. denied, 222 N.J. 17 (2015).

The regulation governing the time within which "calculation error" appeals must be taken provides:

> Each hospital, within 15 working days of receipt of its Medicaid inpatient rate package, including its final rate and applicable add-on amounts, shall notify the Division of any calculation errors in its final rate. <u>For years after the initial year that rates are set under this system, and for which no recalibration or rebasing has occurred, only calculation errors that relate to adjustments that have been made to the rates since the previously announced schedule of rates shall be permitted</u>. For subsequent years, calculation error appeals will be limited to the mathematical accuracy or data used for recalibration, rebasing or both. Calculation errors are defined as mathematical errors in the calculations, or data not matching the actual source documents used to calculate the DRG weights and rates as specified in this subchapter. Hospitals shall not use the calculation error appeal process to revise data used to calculate the DRG weights and rates.
>
> [<u>N.J.A.C.</u> 10:52-14.17(b).]

"Recalibration" is "the adjustment of all DRG [Diagnosis Related Group] weights to reflect changes in relative resource use associated with all existing DRG categories and/or the creation or elimination of DRG categories." <u>N.J.A.C.</u> 10:52-14.2. "Rebasing" is "setting the Statewide base rate using a more current year's claim payment data." <u>Ibid.</u> "Statewide base rate" is "a rate per case, which applies to all general acute care hospitals based on

the total Medicaid inpatient fee-for-service payment amount estimated for a given rate year." Ibid.

On appeal, the Hospitals argue that N.J.A.C. 10:52-14.17(b) does not bar them from raising the alleged calculation error related to the 1995 to 1998 rates in their challenges to the 2013 rates. The Hospitals argue that since they raised this calculation error in their appeals for 1995 to 1998, and since those appeals had not yet been resolved when they challenged the 2013 rates, the issue was preserved for all subsequent rate years, including 2013. We disagree.

It is undisputed that in 2009, the Division adopted new rules that established an initial statewide base applicable to all hospitals for the 2009 rate year. 41 N.J.R. 2921 (codified at N.J.A.C. 10:52-14.6). The Division's regulation provides that if any hospital wished to raise a calculation error pertaining to proposed 2009 rates, it had to do so within fifteen days after receipt of the rates. N.J.A.C. 10:52-14.17(b). It is undisputed that the Hospitals did not pursue challenges to the 2009 rates based on the alleged calculation error in the setting of the 1995 to 1998 rates.

As noted, N.J.A.C. 10:52-14.17(b) provides that for years after the initial year of the new rate-making system, and for years in which the rates have not been recalibrated or rebased,

12                                                    A-0364-15T2

the Division will only consider calculation errors "that relate to adjustments that have been made to the rates since the previously announced schedule of rates . . . ." Because no recalibration or rebasing occurred for the 2013 rate year, the Hospitals could only challenge those rates based on adjustments made since the issuance of the 2012 rate schedule, unless they had preserved the issue by challenging the 2009 rates and subsequent years on that basis.

The Hospitals argue that the Division's interpretation of the rule is inconsistent with the explanation the Division provided when it adopted the prior version of this regulation, which was substantially the same. The Division had stated

> Hospitals have an obligation to review their rates annually and, if appeal of those rates is appropriate, to appeal in a timely manner. If a timely appeal of those rates has not been filed, the rules do not permit a hospital to challenge a prior year's rate calculation in an appeal filed in a later year. It is a hospital's responsibility to comply with procedural appeal requirements. Separately, with regard to rates which were appealed in a timely manner and which have a decision pending at the time of a second appeal, if a hospital is successful in its appeal with regard to specific issues, the amendment will not be used as described with regard to those issues. If a hospital receives an adverse decision with regard to specific issues in a particular appeal, those issues cannot be raised again in subsequent appeals.

> [37 N.J.R. 2508 (July 5, 2005).]

A-0364-15T2

The statement does not support the Hospitals' argument. The Division explained that under the rule, a hospital could not raise a calculation error in a rate appeal if the error was made in a prior rate year and the hospital had not filed a timely appeal. As we noted previously, a hospital must file an appeal challenging the rates in the manner prescribed by N.J.A.C. 10:52-14.17(b).

The regulation required a hospital to raise any calculation error pertaining to the rates for 1995 to 1998 in a timely appeal challenging the 2009 rates. Here, it is undisputed that none of the Hospitals pursued a challenge to the 2009 rates based on those earlier alleged calculation errors. Therefore, the regulation precluded the Hospitals from raising that issue in a challenge to the 2013 rates.

In support of their argument, the Hospitals also rely upon our unpublished decision in In re Adoption of Amendments to N.J.A.C. 10:52, No. A-6649-04 (App. Div. Apr. 26, 2007) (slip op. at 18-20), certif. denied, 192 N.J. 296 (2007), which upheld the time limitations in the earlier version of the regulation. In that case, we addressed the concern that the regulation would preclude a hospital from raising a calculation error from a previous rate year or years that the Division has not corrected and continues to have an impact upon the hospital's current rates. Id. at 18.

We found the concern was misplaced. <u>Ibid.</u> We stated that the regulation was "merely [intended] to prevent the late recognition of a long-standing calculation error that was not timely appealed . . . ." We note that this was "a practice that could engender difficult and financially unforeseeable retroactive rate adjustments." <u>Ibid.</u>

We added that the regulation was "not designed to prevent the continuation of ongoing timely rate calculation appeals or the application of favorable results from those appeals to subsequent rates, <u>when likewise appealed in a timely fashion</u>." <u>Ibid.</u> (emphasis added). Therefore, the regulation would bar only those issues that had not been raised in a timely fashion. <u>Id.</u> at 19.

Therefore, our opinion makes clear that in order to preserve a challenge to rates for a particular year based on an alleged calculation error relating to a prior rate year, the hospital must raise the issue in a timely manner. The Hospitals failed to do so.

Even if we were to conclude that <u>N.J.A.C.</u> 10:52-14.17(b) does not preclude the Hospitals from raising the alleged calculation error from 1995 to 1998 in their appeals challenging the 2013 rates, the Hospitals would not be entitled to any rate relief on that basis. The alleged error pertains to the Division's

interpretation and application of N.J.A.C. 10:52-5.17(a), the "economic factor" regulation.[2]

The regulation provides that after the 1993 rate year, a hospital's inpatient Medicaid rate will be updated annually by an economic factor that "will be the factor recognized under the TEFRA target limitations." Ibid. The term "TEFRA target limitations" in N.J.A.C. 10:52-5.17(a) refers to the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, § 101, 96 Stat. 324, 331-36 (codified at 42 U.S.C.A. § 1395ww, but later amended).

The Hospitals argue that the "economic factor" referenced in the regulation is the "market basket percentage increase" determined in accordance with the provisions of TEFRA that were in effect in 1993, when the regulation was first adopted. In Our Lady of Lourdes Hospital, supra, we reject that argument and conclude that the Division properly interpreted the term "economic factor" to mean "the applicable percentage increase" determined in accordance with the provisions of TEFRA in effect at the time the rates are set. (Slip op. at 13-21).

---

[2] The regulation was later recodified at N.J.A.C. 10:52-5.13(a). In this opinion, we refer to the regulation as N.J.A.C. 10:52-5.17(a) because that was the regulation in effect when the dispute concerning its interpretation and application first arose.

A-0364-15T2

Thus, even if the Division erred by refusing to entertain the challenges to the 2013 rates based on the alleged calculation error in setting the reimbursement rates for 1995 to 1998, the hospitals have not suffered any harm from that determination. As indicated by our decision in Our Lady of Lourdes Hospital, the Division did not err in computing the Hospitals' rates for 1995 to 1998. Therefore, the Hospitals were not entitled to any rate relief based on this alleged calculation error.

III.

We next consider the Hospitals' contention that the Division did not have authority to apply a zero percent "economic factor" to the 2013 rates. The Hospitals contend that the Division implemented this change in the State's Medicaid plan without complying with the applicable federal Medicaid statutes and regulations. Again, we disagree.

Medicaid is a federally established, state-run program, Estate of F.K. v. Div. of Med. Assistance & Health Servs., 374 N.J. Super. 126, 134 (App. Div.), certif. denied, 184 N.J. 209 (2005), "designed to provide medical assistance," at public expense, "to individuals 'whose income and resources are insufficient to meet the cost of necessary medical services.'" N.M. v. Div. of Med. Assistance & Health Servs., 405 N.J. Super. 353, 359 (App. Div.) (quoting 42 U.S.C.A. § 1396), certif. denied,

199 N.J. 517 (2009). Participation in Medicaid is voluntary, but the participating states must comply with the federal Medicaid statute and any regulations promulgated by the federal agency to implement the statute. Mistrick v. Div. of Med. Assistance & Health Servs., 154 N.J. 158, 166 (1998).

States that participate in Medicaid must establish and adhere to an approved state plan "specify[ing] comprehensively the methods and standards" to be used in setting reimbursement rates. 42 C.F.R. § 447.252(b) (2017). Any changes in policy must be duly authorized by amendment to the plan, subject to federal approval. 42 C.F.R. § 430.12 (2017).

To that end, the implementing state agency must provide public notice of "any significant proposed change in its methods and standards for setting payment rates for services." 42 C.F.R. § 447.205(a) (2017). The notice must:

> (1) Describe the proposed change in methods and standards;
>
> (2) Give an estimate of any expected increase or decrease in annual aggregate expenditures;
>
> (3) Explain why the agency is changing its methods and standards;
>
> (4) Identify a local agency in each county (such as the social services agency or health department) where copies of the proposed changes are available for public review;
>
> (5) Give an address where written comments may

be sent and reviewed by the public; and

(6) If there are public hearings, give the location, date and time for hearings or tell how this information may be obtained.

[42 C.F.R. § 447.205(c) (2017).]

In addition, the notice must be published "before the proposed effective date of the change" in a state register, certain widely circulated newspapers, or online at the agency's website. 42 C.F.R. § 447.205(d) (2017).

As noted previously, in June 2012, the Governor signed the Annual Appropriations Act for FY 2012-2013, which stated that effective January 1, 2013, Medicaid inpatient payment rates will not be "adjusted to incorporate the annual excluded hospital inflation factor, also referred to as the economic factor recognized under" TEFRA. L. 2012, c. 18.

On December 11 and 12, 2012, a notice regarding the proposed change in the Medicaid reimbursement rates was published in several newspapers in the State, including the Star-Ledger, the Bergen Record, the Trenton Times, and the Press of Atlantic City. The notice stated:

TAKE NOTICE that the New Jersey Department of Human Services (DHS), Division of Medical Assistance and Health Services (DMAHS) intends to seek approval from the United States Department of Health and Human Services (HHS), Centers for Medicare and Medicaid Services (CMS), for amendments to the New Jersey

> Medicaid (Title XIX) State Plan, in order to implement State Fiscal Year 2013 (SFY 2013) budget provisions pursuant to the New Jersey Fiscal Year 2013 Appropriations Act.
>
> Medicaid Hospital Inpatient Services exclusion of Annual Inflation Factor[.]
>
> Notwithstanding the provisions of any law or regulation to the contrary, of the amounts appropriated to Payments for Medical Assistance Recipients — Inpatient Hospitals, effective January 1, 2013 the Medicaid Inpatient Fee-For-Service payment rates will not be adjusted to incorporate the annual hospital inflation factor, also referred to as the economic factor recognized under the CMS TEFRA target limitations.
>
> The above provision is expected to result in an aggregate savings of $4.5 million (State and Federal funds) for State Fiscal Year 2013. DMAHS has determined that this action will not impair client access.

The notice stated that it was meant to satisfy federal statutory and regulatory requirements. The notice indicated that a copy would be available for public review at medical assistance customer centers, county welfare agencies, and online at the Division's website. The notice also stated that comments and questions may be submitted in writing within thirty days of the notice.

On February 13, 2013, after the comment period had ended, the State submitted its proposed amendment to the State's Medicaid plan to CMS. CMS approved the proposed amendment on September 20,

2013, and its approval was effective as of January 1, 2013, the date specified by the Annual Appropriations Act for implementation of the change.

On appeal, the Hospitals argue that they did not have an opportunity to voice their concerns about the amendment before the change was implemented or to adjust their budgets to address the decreased revenues they would receive in 2013. They contend the Division's alleged compliance with Medicaid's notice and comment requirements was merely a pretext, and the Division never really intended to consider the comments.

We are convinced these arguments are without sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E). We note, however, that there is sufficient credible evidence in the record to support the ALJ and the Director's finding that the Division complied with 42 C.F.R. § 447.205 when it eliminated the inflation factor for 2013.

Here, the Division published notice of the proposed change to the State's Medicaid plan before the effective date of the change, and the Division did not submit the plan amendment to CMS until the comment period was complete. CMS approved the plan amendment and allowed it to be implemented as of January 1, 2013. Moreover, the Annual Appropriations Act for the 2012-2013 fiscal year was enacted in June 2012. The Hospitals could reasonably have anticipated that the State would be seeking CMS approval of a

change in its Medicaid plan for 2013, and if CMS approved the change, the 2013 Medicaid rates would not be adjusted for inflation.

IV.

The Hospitals also argue that the facts clearly establish that the charity care mandate and the limited reimbursement received for the treatment of Medicaid and charity care patients result in an unconstitutional taking of their property without just compensation; the Director violated their right to due process by denying them the opportunity to engage in an "interactive process" regarding the merit standard for rate appeals in N.J.A.C. 10:52-14.17; the Division erred by finding that the constitutional claims had been previously resolved by decisions of this court; and the Director erred by finding that the Division did not have jurisdiction to consider these claims.

At oral argument, counsel for the Hospitals advised the court that since the filing of this appeal, the Hospitals have filed an action in the Law Division in which they are raising their constitutional claims regarding the State's charity care mandate and the State's alleged inadequate charity care subsidies. Because the Hospitals will be pursuing these claims in the trial court, we need not address the Hospitals' additional arguments on appeal.

Therefore, we affirm the dismissal of the Hospital's

22                                                        A-0364-15T2

constitutional claims with regard to the 2013 Medicaid reimbursement rates, without prejudice to the assertion of these claims in the Hospitals' pending Law Division action.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION